UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID MCCAIG, *et al*,           §
                                 §
        Plaintiffs,              §
VS.                              §        CIVIL ACTION NO. C-11-351
                                 §
WELLS FARGO BANK (TEXAS), N.A.,  §
                                 §
        Defendant.               §

## ORDER

Before the Court are "Defendants' [sic] Motion for Summary Judgment and Motion to Dismiss With Prejudice Pursuant to FRCP 12(b)(6)" (D.E. 17) and "Defendant's Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment, Supplement to Motion for Summary Judgment, and Request for Oral Hearing" (D.E. 20). Plaintiff timely filed his responses. D.E. 19, 27. For the reasons set out below, the Defendant's motion is GRANTED IN PART and DENIED IN PART.

## FACTS

The Plaintiff's complaint was filed in state court pursuant to Texas Rules of Civil Procedure and was removed to this Court pursuant to diversity jurisdiction. D.E. 1, 1-3, p. 5. To date it has not been amended to comply with the federal pleading rules.[1] Neither has Plaintiff briefed his specific complaints in connection with the Defendant's motions.

---

[1]  On August 16, Plaintiff filed an Amended Complaint (D.E. 35), which substituted his capacity as "Heir at Law" for "Representative of the Estate," as required by this Court's Order (D.E. 34). However, the substance of the allegations did not change and the pleading does not otherwise conform to federal procedure as identified herein. The Motion's challenges to the pleading are evaluated with reference to the original petition filed in state court and the Court's analysis applies equally to the amended complaint.

Thus the facts underlying Plaintiff's complaint have had to be pieced together from the briefing and summary judgment evidence.

On May 23, 2002, Allie Vida McCaig, age 96, executed a Note (D.E. 17-1) and Deed of Trust (D.E. 17-2) in connection with the purchase of a single family residence located at 4626 Quincy Drive, Corpus Christi, Texas (the Property). The Note had a 30-year payout. D.E. 17-1. Just over a year after the transaction, on June 18, 2003, Allie Vida McCaig died. D.E. 19-1, p. 6. While there are conflicting representations in the record as to whether Ms. McCaig died with or without a will, it is undisputed that she left two heirs, who were in agreement as to the disposition of Ms. McCaig's property such that no formal probate proceeding was required. Those heirs were Ms. McCaig's son, David McCaig, and his sister, Winora McCaig.

Pursuant to the heirs' agreement, David McCaig assumed occupancy of the Property and continued to make payments on the Note. The Deed of Trust recites that it is binding on successors and assigns to both parties and it has a "due on sale" clause that specifically excepts transfers by devise or descent. D.E. 17-2. On September 1, 2007, however, David McCaig failed to timely make a monthly payment and the loan went into default. D.E. 17-3, p. 4. On January 2, 2008, Wells Fargo provided to David McCaig a Customer Account Activity Statement reflecting all payments and charges on the account. D.E. 19-2. Later that month, McCaig was contacted by a debt collector showing $8,807.32 due and owing on the Note and providing an opportunity to reinstate the indebtedness. D.E. 19-3.

While the allegations are not disclosed in this record, David McCaig sued Defendant Wells Fargo in the 214th Judicial District Court, Nueces County, Texas in Cause No. 08-487-F.  D.E. 17-3, p. 2.  That litigation was resolved by an Agreed Final Order of Dismissal with Prejudice on October 17, 2008.  D.E. 17-3, p. 2.  Thereafter, effective March 30, 2009, the parties executed a Compromise Settlement Agreement and Release of All Claims.  D.E. 17-3.  As a part of the settlement, David McCaig and his wife agreed that the note was in default in the amount of $20,735.21 and they agreed to make payments under a Forbearance Agreement also effective March 20, 2009.  D.E. 17-4.  According to that agreement, monthly payments were scheduled with the admonition that they were to be received in Wells Fargo's offices by the date shown, with no grace period.  D.E. 17-3, pp. 6-7; 17-4, p. 2.[2]  All claims between the parties up to that time were then released.  D.E. 17-3, p. 8.

For the next 18 months, the McCaigs made timely payments pursuant to the Forbearance Agreement.  However, the payments that were due October 30, 2010 and November 30, 2010 were received by Wells Fargo, but were posted as received after the due date.  D.E. 19-6, p. 4.  On December 23, 2010, David McCaig obtained another Customer Account Activity Statement from Wells Fargo.  D.E. 19-5.  On January 18, 2011, Wells Fargo's attorneys sent a collection letter to McCaig claiming a past due balance on the debt, giving notice of acceleration, and notice of a foreclosure sale scheduled for March 1, 2011.  D.E. 19-6, p. 1.  On March 8, 2011, Wells Fargo sent a

---

[2]   The McCaigs further consented to being contacted concerning the loan at the address and phone numbers provided, acknowledging that their contact information may be used by "automated dialing systems which do not and cannot distinguish the fact that the McCaigs are not obligors on the Loan and not personally liable for the subject Loan Agreement Debt.  D.E. 17-4.

letter addressed to "Occupant, Estate of Allie Vida McCaig" claiming that ownership of the Property would soon be transferred and providing notice of steps to be taken if the occupants want to remain at that address.  D.E. 19-6.

While the intervening events, again, are not clear, on March 25, 2011 attorneys for Wells Fargo sent a letter addressed to "Estate of Allie Vida McCaig" with another notice of default and opportunity to cure, notice of intent to accelerate, and expectation of foreclosure if the default was not cured.  D.E. 19-6, pp. 10-11.  In March 2012, the loan became current.  D.E. 18, p. 2.  David McCaig initiated this suit against Wells Fargo on October 4, 2011.  D.E. 1-3, p. 20.  Reciting a number of causes of action in his pleading, he now claims as damages:  time lost researching the facts and attempting to correct Wells Fargo's misrepresentations; extra expense in making loan payments because of the need to use overnight and certified mail; mental and physical anguish due to anxiety over loan; loss of sleep, headaches, and "daily disruption of my activities, both business and personal, from their mishandling of this loan."  D.E. 19-4, p. 2.  He also seeks statutory damages, damages based on improper charges, attorney's fees, and costs.

## DISCUSSION

### A.  Breach of Contract

The Plaintiff's pleading recites a cause of action for breach of contract with respect to "the Note, Deed of Trust, riders, modification offers, regulations and published guidelines for the servicing of mortgage loans."   D.E. 1-3, p. 9.  In nine itemized complaints, McCaig claims wrongdoing with respect to the improper application of payments, the improper charging of late fees, and the improper domino effect into the

procedures invoked for default and collection.  He claims overcharges and attorney's fees as well as consequential damages.

In its Motion, Wells Fargo claims that David McCaig does not have "standing" to pursue a breach of contract claim because he was not a party to the Note or Deed of Trust.  Wells Fargo also asserts that there was no breach of contract and that all allegations are fatally inadequate as conclusory and devoid of facts.  The issue of David McCaig's "standing" is actually a question of "capacity" and has been addressed in connection with "Wells Fargo's Motion to Show Authority and to Show Cause" (D.E. 22), which resulted in an Order (D.E. 34), permitting David McCaig to proceed on such claims as "Heir at Law to Allie Vida McCaig, Deceased," which he has now done.  D.E. 35.

Wells Fargo has offered affidavit evidence that the loan is now current.  D.E. 18.  That affidavit supports the assertion that the borrower is not in breach of contract.  However, that does not purport to eliminate the McCaig claim that Wells Fargo is in breach.  Thus Wells Fargo is not entitled to summary judgment on the breach of contract theory on its merits.

That leaves the question of the adequacy of the pleadings.  As noted above, the pleading that David McCaig filed in state court and amended on August 16, 2012 is cryptic and is lacking facts that, taken as true, indicate that his claim is plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 (2007).  His summary judgment evidence is some indication that there is a substantial discrepancy between the time that payments were

tendered and the time that they were credited, resulting in potential overcharges of interest and/or late charges.  D.E. 19-4.  Pursuant to Fed. R. Civ. P. 15, the Court grants Plaintiff leave to amend his complaint to specify the overcharges, if any, he claims as well as any other specific contract breaches at issue in this case as required by *Twombly* and *Iqbal*.  In the event that Plaintiff fails to timely and properly amend his complaint, Wells Fargo may renew its motion to dismiss.

**B.  Texas Fair Debt Collection Act.**

Wells Fargo asserts that, pursuant to § 393.002(a)(3), it is not subject to any prohibitions of Chapter 393 of the Texas Finance Code because it is a national banking association that is insured through the FDIC.  D.E. 18, p. 2.  McCaig's response does not controvert the factual or legal basis for this clear proposition of law and fact.  Consequently, the Court GRANTS Wells Fargo summary judgment on this issue and DENIES any claim based on Chapter 393 of the Texas Finance Code.

McCaig did, however, include allegations under Chapter 392 of the Texas Finance Code.  He alleges that he is a "consumer" and that Wells Fargo is a "debt collector" under the terms of the Fair Debt Collection Act, Tex. Finance Code § 392.001.  Wells Fargo seeks summary judgment that David McCaig is not a "consumer" under Tex. Finance Code §§ 392.001.  In this respect, Wells Fargo is again complaining that David McCaig does not have the contractual rights that his mother, Allie Vida McCaig, had.  It further argues that an "estate" cannot be a "consumer."   As indicated, this issue has been disposed of.  D.E. 34, 35.

McCaig alleges that Wells Fargo violated the Texas Finance Code, setting out the language of the Code claimed to be at issue.   While the citations in the pleading are inaccurate, each substantive allegation is supportable under Chapter 392 as follows:

- Using threats to represent to any person other than the consumer that the consumer is willfully refusing to pay a non-disputed consumer debt when the debt is in dispute.  D.E. 1-3, pp. 7-8 (see § 392.301(a)(3)).

- Threatening that nonpayment of a consumer debt will result in the sale of the person's property without proper court proceedings or threatening to take an action prohibited by law.  D.E. 1-3, p. 8 (see § 392.301(a)(7), (8)).

- Using unfair or unconscionable means to collect or attempt to collect interest or a charge, fee, or expense incidental to the obligation that is not legally chargeable to the consumer.   D.E. 1-3, p. 8 (see § 392.303(a)(2)).

- Misrepresenting the character, extent, or amount of a consumer debt. D.E. 1-3, p. 8 (see § 392.304(a)(8)).

- Representing that a consumer debt may be increased by the addition of attorney's fees or other charges if a written contract or statute does not authorize the additional fees or charges.   D.E. 1-3, p. 8 (see § 392.304(a)(12)).

Wells Fargo's motion does not address these allegations on their merits insofar as they relate to Chapter 392.  Thus it is not entitled to summary judgment eliminating all claims under the Texas Fair Debt Collection Act.

Wells Fargo does seek judgment dismissing any claims under Tex. Finance Code § 392.302.  The discovery deadline has passed and Wells Fargo asserts that there is "no evidence" of conduct that violates that section.  As noted above, none of McCaig's claims are derived from § 392.302.  Thus, there is no basis for issuing a summary judgment on such claims.

The allegations under Chapter 392 are, however, factually deficient under *Twombly* and *Iqbal*.  Pursuant to Fed. R. Civ. P. 15, the Court grants Plaintiff leave to amend his complaint to specify the conduct at issue as required by *Twombly* and *Iqbal*.  In the event that Plaintiff fails to timely and properly amend his complaint, Wells Fargo may renew its motion to dismiss.

**C.  Deceptive Trade Practices Act.**

With respect to McCaig's causes of action under the DTPA, Wells Fargo's motion challenges his status as a consumer, the applicability of the tie-in statute regarding the Texas Finance Code Chapter 393, and the DTPA's coverage of loan transactions.  As noted above, the Court agrees that Chapter 393 does not apply, which eliminates that tie-in basis for liability.

Wells Fargo cites *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980) for the proposition that a loan transaction is not a "good" or "service" as required to support "consumer" status under the DTPA.  McCaig responds that, under *La Sara*

*Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 566 (Tex. 1984), *Riverside* was limited to its facts.  McCaig argues that he sought more than a loan from this transaction—he sought to pay the loan, transfer title, and determine the amount of the loan outstanding.

The *La Sara* holding allows claims where the actual objective of the transaction is the acquisition of a good or service.  To the contrary, a bank's incidental acts in administering a loan do not constitute an independent objective that takes the transaction out of *Riverside's* denial of DTPA liability.  *E.g.*, *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 615 (Tex. App.–Waco 2000, pet. denied).  The Court finds that McCaig's complaints do not involve an independent objective separate from the ordinary incidents of a loan transaction.  This case is not distinguishable from *Riverside* and the DTPA does not apply to these allegations as a matter of law.  *See FDIC v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986).  The Court GRANTS Wells Fargo's motion for summary judgment on all DTPA claims.

### D.  Breach of Fiduciary Duty.

McCaig asserts a breach of fiduciary duty in that Wells Fargo had the "highest degree of duty to properly apply and account for" payments, refunds, premiums, and other monies paid to Wells Fargo.  D.E. 1-3, p. 11.  Wells Fargo asserts that, as a matter of law, there is no fiduciary duty between lender and borrower.  *E.g., Bittinger v. Wells Fargo Bank, N.A.*, 744 F.Supp.2d 619, 626 (S.D. Tex. 2010).

McCaig responds that Wells Fargo, in its capacity as an escrow agent, should be charged with a fiduciary duty with respect to its safeguarding and accounting for funds received.  He cites *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969)

(addressing the status of a title company as escrow agent) and *White v. Mellon Mortgage Co.*, 995 S.W.2d 795, 801 (Tex. App.—Tyler 1999, no pet.).  The *Pippen* case did not address this issue.  According to *White*,

> Payment of funds by the mortgagor into an escrow account for the mortgagee's use to meet tax and insurance obligations on the property as they accrue does not create a trust or fiduciary relationship under Texas law.  *Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 905 n. 2 (Tex. 1982).

*White, supra* at 801.

As a matter of law, Wells Fargo did not owe a fiduciary duty to McCaig.  Thus the Court GRANTS Wells Fargo's motion on this issue.

### E.  Unjust Enrichment.

Wells Fargo argues that McCaig cannot satisfy the burden to show that Wells Fargo has obtained a benefit by fraud, duress, or the taking of an undue advantage as required for an unjust enrichment claim.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Among its arguments, Wells Fargo asserts that there is "no evidence" to support this claim.

Under the "Unjust Enrichment" section of his pleading, McCaig alleges that Wells Fargo has "demanded and collected funds that were not owed or were not required to be paid."  There is no reference to fraud, duress, or undue advantage.  Furthermore, McCaig does not address this theory in his Response or offer summary judgment evidence to support the claim.  D.E. 19.  The Court GRANTS Wells Fargo's motion on this issue.

### F.  Money Had and Received.

Under the heading "Unjust Enrichment," McCaig states the definition of a "money had and received" claim.  He thus acknowledges that it is a claim in equity to prevent unjust enrichment.  Wells Fargo seeks judgment eliminating this claim because the facts in this case simply show that McCaig paid money on the note in order to preserve his right to occupy and own the Property.  There is no indication that an inequity occurred.

McCaig's Response does not address this argument.  D.E. 19.   The Court GRANTS Wells Fargo's motion on this issue.

### CONCLUSION

For the reasons set out above, the Court finds that a hearing on these issues would not be helpful.  The Court DENIES a hearing on the Motion.

The Court DENIES IN PART Wells Fargo's Motion (D.E. 17, 20) with respect to the causes of action for breach of contract and violations of the Texas Fair Debt Collection Act.  The Plaintiff is ORDERED to file on or before August 31, 2012 an amended complaint in full compliance with federal procedure and the fact pleading requirements of *Twombly/Iqbal* with respect to his claims for breach of contract and violations of the Texas Fair Debt Collection Act.   In the event that he fails to timely amend his complaint, Wells Fargo is granted leave to renew its motion to dismiss those claims.

The Court GRANTS IN PART Wells Fargo's Motion (D.E. 17, 20) with respect to Plaintiff's claims for violations of the Texas Deceptive Trade Practices Act, breach of fiduciary duty, unjust enrichment, and money had and received.

The Court DENIES Wells Fargo's claim for attorney's fees at this time.

ORDERED this 20th day of August, 2012.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE