UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| David McCaig, individually and as the Heir at Law of Allie Vida McCaig, and Marilyn McCaig | § § § § § § § § | 2:11-cv-00351 |
| vs. | | |
| Wells Fargo Bank (Texas), N.A. | | JURY REQUESTED |

**PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, David McCaig, individually and as the Heir at Law of Allie Vida McCaig, and Marilyn McCaig and makes this their Second Amended Original Petition, complaining of Wells Fargo Bank (Texas), N.A., as follows:

I.

**This amendment is intended to comply with the Court's Order, docket number 36. Hence additional leave is not required at this time.**

1. This is a Level 2 discovery case. This pleading is required by the Texas Rules of Civil Procedure.

2. Plaintiffs are residents of Nueces County. The property that is the subject of their suit is located in Nueces County. The loan contract was to be performed in Nueces County. Venue is proper in Nueces County Texas by operation of the applicable laws of the State of Texas.

3. Defendant Wells Fargo Bank (Texas) N.A., is a foreign corporation from the State of California, doing business in Texas, the mortgage holder of Plaintiff's home, and has been served and answered herein.

4.      No additional Service of Citation is requested.

BACKGROUND FACTS

5.      Allie Vida McCaig (deceased) was a homeowner in Nueces County at the time of her death. Plaintiff obtained a purchase money, or purchase money refinance, loan from Defendant, account number \*\*\*\*-\*\*\*\*\*\*5767.

6.      Mrs. McCaig died in June of 2003. Although she left a will dividing her estate equally between her two children, the family did not probate the will. The only formalization of her Estate was the execution of affidavits of heirship. Her principal asset was her home at 4626 Quincy Dr., Corpus Christi, Texas. At the time of her death there was an outstanding mortgage with Defendant. David McCaig, her son, with the agreement of his sibling, undertook to make payments, using her loan number, and mailing those payments to Defendant. Because of their conscientious treatment of this obligation, the mortgage amount actually decreased in July 2008.

7.      In 2007, David McCaig contacted Wells Fargo to begin making arrangements to have the loan reaffirmed in his name. Shortly thereafter, he began to get foreclosure notices in the name of his deceased mother. Mr. McCaig contacted Wells Fargo and was directed to the Loss Mitigation department. At the Defendant's request, he continued making payments, obtaining mail receipts for each payment that shows the date delivered, and forwarded to Defendant the Death Certificate, and Affidavits of Heirship showing his interest in the property showing his interest in the property and the loan.

8.      In February of 2008, as a consequence of Wells Fargo's misrepresentations and attempted foreclosure, suit was filed for wrongful foreclosure. The suit was settled with

an agreement on the principal amount due, and dismissed without prejudice. David McCaig and his wife, Marilyn McCaig, individually and as Heirs of Allie Vida McCaig, were parties to the agreement. According to that agreement, effective March 30, 2009, monthly payments were scheduled with the admonition that they were to be received in Wells Fargo's offices by the date shown, with no grace period. All claims prior to the effective date of the forebearance agreement were released. Subsequently all payments were timely made from the effective date of the forebearance agreement to its satisfaction, in March 2012.

9. Despite having been party to suit, having a binding agreement, and the receipt of timely payments, Wells Fargo continues to decline to recognize Plaintiff as the legal heir of the deceased, fails to accurately account for timely payments, fails to timely acknowledge timely payments, and has refused to confer or explain their actions. In the time period April 29, 2009 through July 26, 2011, no payment was credited when received in certified funds by Defendant. Defendant has not provided its records for the period July 26, 2011 to March 15, 2012, however based on past practice, Plaintiffs reasonably believes that those timely payments were not appropriately credited, either.

10. On April 6, 2010, Defendant forwarded a Notice of Intent to Foreclose to Plaintiffs as "Estate of Allie Vida McCaig c/o David and Marilyn McCaig". On April 12, 2010, Plaintiff David McCaig responded by facsimile, providing verification that all payments had been timely made. In his correspondence, Plaintiff indicated that the false allegation of untimely payment was "heart stopping".

11. On November 30, 2010, Defendant forwarded a Notice of Intent to Foreclose to Plaintiff, which was received at the property. Mr. McCaig received the Notice on

December 14, 2010 from the tenant. Despite talking with four representatives on the phone, and sending three facsimile requests for information, no response was received explaining the issuance of the Notice at a time that the forebearance agreement was completely current. In his correspondence, Mr. McCaig again indicated that the false allegation of untimely payment was "extremely upsetting". In a follow up telephone call, Mr. McCaig was told that he would have to pay Defendant's attorneys fees to bring the account current in their system, which is contrary to the forebearance agreement's terms.

12.     On December 17, 2010, Defendant, through its attorneys, Barrett Daffin, Frappier, Turner & Engel, LLP, forwarded a letter of intent to foreclose and accelerate the loan to "David McCaig, c/o Vaugh Westheimer". At the time that the foreclosure was initiated, the forebearance agreement was fully performed according to its terms, all payments under the forebearance agreement had been timely made.

13.     On January 18, 2011, Defendant, through its attorneys, Barrett Daffin, Frappier, Turner & Engel, LLP, forwarded a letter of intent to foreclose and accelerate the loan to David McCaig, with a Notice of Trustee's Sale. At the time that the foreclosure was initiated, the forebearance agreement was fully performed according to its terms, all payments under the forebearance agreement had been timely made. Simultaneously a letter was sent by the same attorneys to Vaugh Westheimer, who was the attorney then representing David McCaig, asserting that "the plan was broke". This statement was false at the time it was made because all payments had been timely and fully made as required by the forebearance agreement. A demand for an accounting was made and ignored.

14.     Prior to February 23, 2011, Defendant forwarded to Plaintiff, as "Allie V. McCaig", a "Final Notice" asserting that the home would be sold on March 01, 2011. At

the time that the foreclosure was initiated, the forebearance agreement was fully performed according to its terms, all payments under the forebearance agreement had been timely made.

15. On March 8, 2011, a notice was forwarded by the Defendant to the "Estate of Allie Vida McCaig", asserting that the mortgage "is about to be foreclosed". At the time that the Notice was forwarded, the forebearance agreement was fully performed according to its terms, all payments under the forebearance agreement had been timely made.

16. On March 25, 2011, a "Notice of Default and Intent to Accelerate" was forwarded by Defendant, through its attorneys, Barrett Daffin, Frappier, Turner & Engel, LLP, to the "Estate of Allie Vida McCaig". At the time that the Notice was forwarded, the forebearance agreement was fully performed according to its terms, all payments under the forebearance agreement had been timely made.

17. Prior to April 30, 2012, a request for mortgage review, anticipating foreclosure was forwarded to the "Estate of Allie Vida McCaig" by Defendant, asserting that the loan was "actively" in foreclosure. At the time that the Notice was forwarded, the forebearance agreement was fully performed according to its terms, all payments under the forebearance agreement had been timely made.

18. A sixty day demand under the Fair Debt Collection Act was made on April 12, 2011, and ignored.

19. Despite making regular payments, and despite fully cooperating, Defendant continues to threaten the Plaintiffs with foreclosure. The account is current and was in

compliance with all payment schedules required by the forebearance agreement at all times material to this suit.

## IV.
## FIRST CAUSE OF ACTION – TEXAS DEBT COLLECTION ACT

20.     Plaintiffs are a "consumer" as defined by the Texas Finance Code 392.001(1). Consumer" means an individual who has a consumer debt.

21.     Defendant is a "debt collector" as defined by the Texas Finance Code 392.001 (6). "Debt collector" means a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts. Further, in each notice of intent to accelerate or foreclose, Defendant asserts that it is a debt collector.

22.     Defendant violated the Texas Debt Collection Act by their conduct, including but not limited to:

TEX FINANCE CODE 392.301

(a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:

(3)  representing or threatening to represent to any person other than the consumer that a consumer is willfully refusing to pay a non-disputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute;

(7) threatening that nonpayment of a consumer debt will result in the sale of the person's property without proper court proceedings; or

(8) threatening to take an action prohibited by law.

The Note, Deed of Trust, Forebearance Agreement and Settlement Agreement provide that Defendant can only accelerate and foreclose on the home if the McCaigs

defaulted on the payments required under the Forebearance Agreement. The McCaigs complied strictly with the forebearance agreement, made every payment in full and timely. Nevertheless, Defendant contended that payments were not timely and threatened foreclosure on these dates:

    April 6, 2010

    November 30, 2010

    December 17, 2010

    January 18, 2011

    February 23, 2011

    March 08, 2011

    March 25, 2011

    April 30, 2012.

The Notices were not addressed to the McCaigs at the Notice address specified in the Forebearance Agreement. The Notices were not issued at least 21 days prior to any threatened foreclosure. The Notices did not provide for a reinstatement, as provided under the Deed of Trust. Hence the Notices were not in accordance with the applicable contract(s) and law.

    TEX FINANCE CODE 392.303

(a) In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices:

(2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly

- 8 -

authorized by the agreement creating the obligation or legally chargeable to the consumer;…

As more fully described in paragraphs 31(1) and 31(3), Defendant has attempted to add charges that are not provided for to the balance owed under the Loan. Further, in December 2010, an authorized agent of the Defendant attempted to charge additional attorneys fees.

TEX FINANCE CODE 392.304

(a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

(12) representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges…

Defendant misrepresented that amounts to be paid had not been paid and/or had not been paid timely, when in fact they had been timely paid, on the following dates:

April 6, 2010

November 30, 2010

December 17, 2010

January 18, 2011

February 23, 2011

March 08, 2011

March 25, 2011

April 30, 2012

Defendant added charges for attorneys fees on March 10, 2009, and threatened to charge additional attorneys fees in December 2010. Defendant added additional charges as more fully shown in paragraph 31(3) herein.

23. As a result of Defendants' alleged violations. Plaintiff has suffered damages, including economic damages, lost wages, mental anguish and extreme emotional distress and are entitled to recover actual damages. In addition, Plaintiffs are entitled to injunctive relief to prevent or restrain a violation of the Texas Finance Code; and (2) actual damages sustained as a result of a violation, attorney's fees reasonably related to the amount of work performed and costs. Further, as these violations were in violation of the Texas Finance Code, Plaintiff is entitled to not less than $100 for each violation.

25. All prerequisites to suit have occurred or have been waived by Defendant's knowing conduct.

26. As a direct and foreseeable result of Defendant's violations, Plaintiffs have been force to retain an attorney to prosecute Plaintiff's claim against Defendants and are entitle to recover attorneys fees.

27. Plaintiffs should be awarded exemplary damages against Defendants. *Morante v. American Genreal Financial Center,* 157 F. 3d 1006 (5th Cir. 1998). Exemplary damages are available under the Texas Act.

## V.
## BREACH OF CONTRACT

28. This is a suit for breach of contract. Defendant has breached the terms of the loan agreement, including the terms and conditions contained in the Note, Deed of Trust,

riders, modification offers, forebearance agreements, regulations and published guidelines for the servicing of mortgage loans. The acts and omissions that are the basis for this action as set forth in this complaint were committed by Defendant, its attorneys, or its actual or apparent agents.

29. Pursuant to the terms of the Original Note, Defendant's right to accelerate and foreclose arises only "if Borrower defaults…" Pursuant to the terms of the Deed of Trust, Defendant was to apply funds received as specified, paragraph 3. Pursuant to the terms of the Deed of Trust, Defendant can accelerate the loan only if "Borrower defaults by failing to pay…" The Deed of Trust incorporates the protections of Texas law concerning foreclosure, paragraph 18.

30. Pursuant to the Forebearance Agreement, Defendant agreed to "accept payments from the McCaigs and apply the payments to the Subject Loan Agreement". Pursuant to the Settlement Agreement, for the consideration of the forebearance payments, Defendant "has agreed to accept payments from the McCaigs and to give the McCaigs an opportunity to avoid foreclosure of the Property, as long as the McCaigs make the required payments consistent with the Forebearance Agreement and the Loan Agreement". Further, Defendant agreed to rescind the acceleration of the maturity of the Note, and to "waive and forebear" …" late fees, other fees and costs, corporate advances, and attorneys fees"…

31. Defendant has breached the contract(s) in at least the following:

1) the improper charging of late charges;

Plaintiff is unable to state with specificity the dates and amounts of late charges added to the loan balance, because no complete accounting has been received from Defendant.

However, a partial accounting received on December 23, 2010, shows that late fees were charged as follows, contrary to the express waiver of the Settlement/Forebearance Agreements, and despite the timely tender of all required payments by Plaintiffs:

| | |
|---|---|
| December 16, 2010 | $41.07 |
| June 6, 2009 | $85.72 |
| May 18, 2009 | $42.86 |
| April 16, 2009 | $42.86 |
| March 25, 2009 | $684.00 |
| February 17, 2009 | $39.77 |
| January 16, 2009 | $39.77 |
| December 16, 2008 | $39.77 |

2) the improper application of payments

Defendant has never, to Plaintiffs' knowledge timely acknowledged and credited payments made. Based on the records available to Plaintiffs, all payments from April 29, 2009 to July 26, 2011 were mis-applied. Based on this practice, Plaintiffs reasonably believe all subsequent payments were similarly mis-applied. A comparison of the date actually paid to the date credited is as follows:

| Date paid | Amount | Date credited | Amount credited | Difference |
|---|---|---|---|---|
| April 29, 2009 | $1647.44 | 5-11 | $16,47.44 | 12 days |
| May 26, 2009 | $1647.44 | 6-10 | $1,647.44 | 15 days |
| June 26, 2009 | $1647.44 | 6-30 | $1,647.44 | 4 days |
| July 28, 2009 | $1647.44 | 7-30 | $1,647.44 | 2 days |
| August 27, 2009 | $1647.44 | 9-02 | $1,647.44 | 6 days |
| Sept 29, 2009 | $1647.44 | 10-06 | $1,647.44 | 7 days |
| October 29, 2009 | $1647.44 | 11-05 | $1,647.44 | 7 days |
| Nov 24, 2009 | $1647.44 | 12-11 | $1,647.44 | 17 days |
| Dec 28, 2009 | $1647.44 | 1-08 | $1,647.44 | 11 days |
| Jan 28, 2010 | $1647.44 | 2-26 | $1,647.44 | 29 days |
| Feb 25, 2010 | $1647.44 | 4-09 | $3,294.88 | 43 days |

| Date | Amount | Posted | Paid | Late |
|---|---|---|---|---|
| March 29, 2010 | $1647.44 | 4-09 | | 11 days |
| April 29, 2010 | $1,570.32 | 5-04 | $1,593.96 | 5 days |
| May 24, 2010 | $1,570.32 | 5-07 | $1,570.32 | Fiction |
| June 28, 2010 | $1,570.32 | 6-24 | $1,570.32 | Fiction |
| July 27, 2010 | $1,570.32 | 6-30 | $1,570.32 | Fiction |
| August 25, 2010 | $1,570.32 | 8-30 | $3,140.65 | 5 days |
| Sept 28, 2010 | $1,570.32 | 10-11 | $2,579.75 | 12 days |
| Oct 27, 2010 | $1,570.32 | 10-11 | | Fiction – no payment was made on October 11th. |
| Nov 23, 2010 | $1,570.32 | 12-02 | Nov 30, 2010 – foreclosure notice | 9 days |
| Dec 27, 2010 | $1,570.32 | 12-02 | $4,710.96 | Fiction – no payment was made on December 02. |
| Jan 25, 2011 | $1,570.32 | 2-15 | $3,140.64 Jan 18 – foreclosure notice Jan 28 – foreclosure demand to atty | 21 days |
| Feb 22, 2011 | $1,570.32 | 3-11 | $1,570.32 March 08 – eviction notice | 17 days |
| March 28, 2011 | $1,570.32 | 4-04 | $1,570.32 March 25 – Foreclosure notice | 7 days |
| April 26, 2011 | $1,570.32 | 6-01 | $1,570.32 | 36 days |
| May 25, 2011 | $1,570.32 | 8-08 | $4,710.96 | 75 days |
| June 27, 2011 | $1,570.32 | 8-08 | | 42 days |
| July 26, 2011 | $1,570.32 | 8-08 | | 13 days |
| August 29, 2011 | $1,570.32 | | | |
| Sept 26, 2011 | $1,570.32 | | | |
| Oct 25, 2011 | $1,570.32 | | | |
| Nov 28, 2011 | $1,570.32 | | | |
| Dec 27, 2011 | $1,570.32 | | | |
| Jan 29, 2012 | $1,570.32 | | | |
| Feb 28, 2012 | $1,570.32 | | | |
| March 15, 2012 | $1,570.32 | | Last payment due - settlement | |

3) the improper charging of fees and costs to the Loan Account

Plaintiff is unable to state with specificity the dates and amounts of late charges added to the loan balance, because no complete accounting has been received from Defendant. However, a partial accounting received on December 23, 2010, shows that additional costs were charged as follows, contrary to the express waiver of the Settlement/Forebearance Agreements, and despite the timely tender of all required payments by Plaintiffs:

| | | |
|---|---|---|
| December 14, 2010 | Property Preservation | $20.00 |
| May 22, 2009 | Statutory expenses | $6.95 |
| March 10, 2009 | Statutory expenses | $60.54 |
| March 10, 2009 | Statutory expenses | 18.00 |
| March 10, 2009 | Statutory expenses | 225.00 |
| March 10, 2009 | Attorneys fees | 650.00 |
| February 26, 2009 | Property preservation | 15.00 |
| December 29, 2008 | Property preservation | 15.00 |

4) the improper acceleration of the debt

As more fully alleged in paragraphs 10 through 17 above, Defendant accelerated and foreclosed on the property although the Plaintiffs were fully compliant with the Forebearance/Settlement Agreement.

April 6, 2010

November 30, 2010

December 17, 2010

January 18, 2011

February 23, 2011

March 08, 2011

March 25, 2011

April 30, 2012

5) failing to provide proper notice of intent to accelerate or intent to foreclose, and failed to abide by the foreclosure procedures provided in the Loan and Deed of Trust.

Notices of foreclosure were sent to others than David or Marilyn McCaig, without providing a reinstatement amount or opportunity, and with less than 21 days to the date of foreclosure, as follows:

April 6, 2010

November 30, 2010

December 17, 2010

January 18, 2011

February 23, 2011

March 08, 2011

March 25, 2011

April 30, 2012

6) failing to provide a release of lien upon completion of the Forebearance/Settlement Agreement.

Plaintiffs have fully complied with each and every term of the Forebearance/Settlement Agreement. However, Defendant has not acknowledged, other than in this litigation, such completion.

7) Failing to provide a proper accounting for funds in escrow or suspense accounts.

Plaintiffs have requested an accounting of all terms of the loan, including escrow and suspense amounts after every demand for foreclosure or acceleration. A partial accounting was provided December 23, 2010. However, every other request has been ignored. The requests were made after the notices dated:

January 18, 2011

February 23, 2011

March 08, 2011

March 25, 2011

April 30, 2012

32. All conditions precedent to suit under the contract(s) have been performed or have been waived by Defendant's knowing conduct.

33. The breach of contract by Defendant has caused damage to including attorneys fees, the amount overpaid on the loan, and consequential damages.

## VI.
## ADDITIONAL DAMAGES

34. In addition to the actual harm suffered by Plaintiff, Plaintiff has been forced to retain the services of an attorney to prosecute their claim, and is entitled to recover reasonable and necessary attorneys fees, costs of court, and other reasonable costs of litigation.

35. In addition, the relevant statutes of Texas provide for an award of exemplary damages, statutory interest, and other penalties.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be served and made to answer herein, and that upon trial on the merits, that Defendant be ordered to pay to Plaintiff its actual harm including any consequential loss, attorneys

fees, costs of court, investigation costs, statutory interest, exemplary damages, and such other and further relief, in law or in equity, to which Plaintiff may show itself entitled.

                                         Respectfully Submitted,

                                         __/s/*Savannah Robinson*_____
                                         Savannah Robinson
                                         ATTORNEY IN CHARGE
                                         FOR PLAINTIFF
                                         SBN: 17108150
                                         Fed. ID: 5922
                                         1822 Main
                                         Danbury, TX 77534
                                         (979) 922-8825

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true, complete and correct copy of the attached and foregoing was this day served by certified mail, return receipt requested, pursuant to the Federal Rules of Civil Procedure, on the following persons, on this the __16___ day of _August_, 2012.

George A. Kurisky, Jr.
BranchM. Sheppard
Johnson, DeLuca, Kurisky & Gould PC
4 Houston Center
1221 Lamar St, Suite 1000
Houston, TX 77010

                                         __/s/ Savannah Robinson_____
                                         Savannah Robinson